IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

SAN JUAN CABLE LLC d/b/a ONELINK COMMUNICATIONS,

   Plaintiff,

v.

PUERTO RICO TELEPHONE COMPANY, INC.

   Defendant.

CIVIL NO. 09-1322 (GAG)

## OPINION AND ORDER

Plaintiff San Juan Cable LLC d/b/a OneLink Communications ("OneLink") brought this action against the Puerto Rico Telephone Company, Inc. ("PRTC") seeking injunctive and declaratory relief for alleged violations of the Cable Communications Policy Act, 47 U.S.C. §§ 521 et seq. ("Cable Act"), and orders issued by the Federal Communications Commission ("FCC"). OneLink also alleges violations of the Puerto Rico Telecommunications Act, P.R. Laws Ann. tit. 27, §§ 265 et seq. Presently before the court is PRTC's motion to dismiss OneLink's amended complaint for failure to state a claim upon which relief can be granted (Docket No. 28). OneLink timely opposed the motion (Docket No. 35), PRTC replied (Docket No. 40), and OneLink surreplied (Docket No. 42). After reviewing the pleadings and pertinent law, the court **GRANTS** PRTC's motion to dismiss (Docket No. 28).

**I.     Standard of Review**

Under Rule 12(b)(6), a defendant may move to dismiss an action against him for failure to state a claim upon which relief can be granted. See Fed.R.Civ.P. 12(b)(6). When considering a motion to dismiss, the court must decide whether the complaint alleges enough facts to "raise a right to relief above the speculative level." See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007). The court accepts as true all well-pleaded facts and draws all reasonable inferences in the plaintiff's favor. Parker v. Hurley, 514 F.3d 87, 90 (1st Cir. 2008). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable

**Civil No. 09-1322 (GAG)**

1 to legal conclusions." Ashcroft v. Iqbal, 556 U.S. ___, slip op. at 14 (2009). "Threadbare recitals
2 of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.
3 (citing Twombly, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer
4 more than the mere possibility of misconduct, the complaint has alleged –but it has not 'show[n]'–
5 'that the pleader is entitled to relief.'" Id. at 15 (quoting Fed.R.Civ.P. 8(a)(2)).

6 **II.    Relevant Background as Alleged in the Amended Complaint**

7       On February 6, 2008, PRTC filed an "Application to Operate in Telecommunications
8 Service" with the Telecommunications Regulatory Board of Puerto Rico ("Board"), through its
9 affiliate Coqui.net Corporation d/b/a Claro TV ("Coqui.Net"). Coqui.Net sought a franchise from
10 the Board to authorize the construction of a cable system and to provide cable television service
11 throughout Puerto Rico. The Board published a "Notice for Franchise Request" in the local press,
12 inviting any interested parties to submit comments on Coqui.Net's application to the Board.
13 OneLink submitted comments opposing the application, as did other franchised cable providers. The
14 Board held a hearing at which OneLink was heard in opposition to Coqui.Net's application. At this
15 hearing, the General Manager of Coqui.Net, Carlos García, allegedly revealed that the construction
16 of PRTC's cable system was already in an advanced stage, such that they could receive part of the
17 signal at their facilities. On October 10, 2008, the Board denied Coqui.Net's franchise application.
18 This decision was ratified in an October 29, 2008 resolution and order in which the Board allegedly
19 stated that PRTC's construction of the proposed system before obtaining the franchise violated P.R.
20 Laws Ann. tit. 27, § 269h(a)(1). Notwithstanding the Board's decision, in November and December
21 of 2008 PRTC continued to construct its cable system, including activities such as excavations,
22 laying of cement, and the installation of specialized equipment cabinets ("IPTV Terminals")
23 containing "Video Ready Access Devices" ("VRADs"). The IPTV Terminals are necessary
24 components of PRTC's cable system and are designed to allow PRTC to provide cable service.

25       On December 11, 2008, PRTC submitted a second franchise application, "Application for
26 Authorization to Provide Video Service," this time applying on its own behalf rather than through

**Civil No. 09-1322 (GAG)**

an affiliate. In its application, PRTC requested that nine of the attached exhibits be treated as confidential and that the proceedings be held in an expedited manner. PRTC also requested "special temporary authority to provide video service" in a separate application ("STA Request"). The STA Request sought authority to continue to construct and operate its cable system and to provide cable service to the homes of up to 200 PRTC employees as part of a beta test, until such time as the Board granted its second franchise application. In a resolution and order dated December 17, 2008, the Board granted PRTC's STA Request. Subsequently, the Board also granted PRTC's request that the exhibits be designated as confidential, as well as its request for expedited review of the franchise application. On January 13, 2009, OneLink filed with the Board a motion to intervene in the proceedings regarding PRTC's second franchise application, and requested that the STA order be stayed until OneLink and other interested parties had an opportunity to present their opposition. On January 30, 2009, OneLink filed a motion for the Board to vacate or stay its confidentiality determinations.

On February 10, 2009, while its motions were pending before the Board, OneLink filed a verified complaint and application for a temporary restraining order and preliminary injunction with this court against PRTC and the Board. See Civil No. 09-1119 (GAG), Docket No. 1. The complaint sought an order preliminarily enjoining and restraining the effect of the STA order, and the Board from authorizing PRTC to provide cable service or construct a cable system over public rights-of-way unless and until the Board issued its final decision granting PRTC's franchise request. On February 18, 2009, this court issued an Opinion and Order finding that there had been a violation of section 621 of the Cable Act, 47 U.S.C. § 541(b)(1), which states that a cable operator cannot provide cable services without a franchise, because PRTC's beta test constituted the provision of cable service prior to the adjudication of such franchise authority. See Civil Case No. 09-1119 (GAG), Docket No. 48 at 3-4, San Juan Cable LLC v. Telecommunications Regulatory Bd. of Puerto Rico, 598 F. Supp. 2d 233, 236 (D.P.R. 2009). The court noted that, therefore, OneLink had a strong likelihood of success on the merits, and ordered the Board and PRTC to show cause why a

**Civil No. 09-1322 (GAG)**

preliminary injunction should not issue under the remaining three injunction factors. Id. The following day, PRTC submitted to the Board a "Request to Discontinue Special Temporary Authority," and, on February 20, 2009, PRTC and the Board filed a joint response to the order to show cause, as well as a motion to dismiss, claiming that OneLink's complaint and TRO application were effectively moot because the Board would soon issue an order granting PRTC's request to discontinue the STA order. Accordingly, on February 23, 2009, the Board filed its resolution and order discontinuing PRTC's special temporary authority. OneLink then opposed the motion to dismiss, arguing that the Board's grant of PRTC's request was insufficient to undo the STA order in its entirety because it might still permit PRTC to construct its cable system over public-rights-of-way without a franchise. On February 24, 2009, PRTC and the Board filed separate papers in support of their motion to dismiss. The Board stated that as a result of the February 23, 2009 resolution and order PRTC could no longer conduct the beta test of IPTV, build its network, or provide cable service, unless and until the franchise was granted. Meanwhile, PRTC represented to the court that the activity authorized by the STA order had been discontinued. Later that day, this court issued an order dismissing OneLink's complaint and TRO application as moot, and judgment was entered accordingly. See Civil Case No. 09-1119 (GAG), Docket Nos. 61 & 62.

On March 2, 2009, the Board denied OneLink's motions to intervene in its consideration of PRTC's second franchise application, as well as the motion for reconsideration of its confidentiality determinations. OneLink appealed these decisions to the Puerto Rico Court of Appeals in an action titled San Juan Cable LLC v. Junta Reglamentadora de Telecomunicaciones, Case No. KLRA200900260 (P.R. App. Ct.), on March 3, 2009. The Court of Appeals then issued on order staying all proceedings as to the second franchise application, pending resolution of the appeal. On March 31, 2009,[1] the Court of Appeals affirmed the resolution of the Board regarding the request

---

[1] OneLink's ammended complaint states that the judgment of the appeals court was issued on April 7, 2009, yet in other documents submitted by the parties it appears that the judgment is dated March 31, 2009. See Docket Nos. 28-3, 31-2. The court understands this to mean that the

4

**Civil No. 09-1322 (GAG)**

for intervention,[2] stating that OneLink's right to intervene would arise once the permit or franchise request was granted. See Judgment by the Puerto Rico Court of Appeals, Docket No. 31-2 at 17. OneLink subsequently filed a motion for reconsideration, which was denied on April 24, 2009. On May 20, 2009, the Supreme Court of Puerto Rico granted OneLink's petition for certiorari to review the Court of Appeal's decision and ordered the Board to stay all proceedings.

Meanwhile, on February 25 and 26, 2009, within two days of this court's order and judgment dismissing OneLink's federal complaint and TRO request, employees and/or agents of PRTC had engaged in excavation, construction, and installation activities for the purpose of constructing PRTC's proposed cable system.[3] PRTC employees and/or agents worked on IPTV Terminals containing VRADs located in the Caparra and Suchville sectors of Guaynabo. They also constructed an aerial extension to an IPTV Terminal located at one of these sites in order to connect it to electric utility poles on the other side of the street. Later, on March 12, 2009, employees and/or agents of PRTC again engaged in excavation, construction, and installation activities at the same Guaynabo sites. In addition, on March 25, 2009, PRTC solicited members of the public to enter their Hato Rey facilities and granted them access to view the operation of PRTC's cable service.

In response to these activities, on March 25, 2009, OneLink filed a Rule 60 motion for relief from this court's February 24, 2009 order and judgment, and for the imposition of sanctions against PRTC. See Civil Case No. 09-1119 (GAG), Docket No. 64. This court then ordered PRTC to show

---

judgment was notified to the parties on April 7th.

[2] The Court of Appeals declined to review the issue of the confidentiality of PRTC's exhibits because it lacked jurisdiction at that stage in the proceedings to consider an interlocutory resolution by the Board. See Judgment by the Puerto Rico Court of Appeals, Docket No. 31-2 at 17-19.

[3] OneLink alleges that at least some of these activites had no other purpose or use, though no factual allegations are offered in support of this conclusion. Therefore, the court disregards the allegation as conclusory for purposes of PRTC's motion to dismiss. See Ashcroft, 556 U.S. ___, slip op. at 14 (2009).

5

**Civil No. 09-1322 (GAG)**

cause at a March 27, 2009 hearing as to why it should not, pursuant to Rule 60, vacate its judgment, enter an injunction as originally requested by plaintiff, and order sanctions against PRTC. At the hearing, the court suggested to OneLink that it should commence a new action against PRTC in order to promote judicial economy and allow the court to go directly to the merits of OneLink's claim. On April 2, 2009, OneLink filed the original complaint in the present action (Docket No. 1), seeking declaratory and injunctive relief against PRTC. In its ammended complaint of April 16, 2009 (Docket No. 24), OneLink avers that on April 3rd and 6th PRTC employees and/or agents once again engaged in excavation, construction, and installation activities which were directly related to the construction of PRTC's cable system.[4]

### III.  Discussion

OneLink alleges that PRTC violated section 621 of the Cable Act, which prohibits the construction or operation of a cable system over public rights-of-way, or the provision of cable service, without first obtaining a valid cable franchise. See 47 U.S.C. §§541(a)(2) & (b)(1). OneLink also alleges that PRTC violated two FCC orders, which contain the same prohibition. See In re Amendment of Part 94 of the Commission's Rules to Permit Private Video Distribution Systems of Video Entertainment Access to the 18 Ghz Band, 6 F.C.C.R. 1270, 6 FCC Rcd. 1270 (Feb. 28, 1991) ("1991 FCC Report and Order"); In re Implementation of Section 621(a)(1) of the Cable and Communications Policy Act of 1984, 22 F.C.C.R. 5101, 22 FCC Rcd. 5101 (Mar. 5, 2007) ("2007 FCC Report and Order"). PRTC now moves to dismiss OneLink's claim (Docket No. 28) on various grounds, including that the Cable Act does not provide a private right of action for a cable incumbent to sue a prospective new entrant in order to enforce statutory franchise requirements. Likewise, PRTC argues that there is no standing under the Cable Act for the enforcement of the two FCC orders that OneLink alleges were violated.

---

[4] Once again, OneLink alleges that at least some of these activites had no other purpose or use, yet offers no factual allegations in support of its conclusion. The court must, therefore, disregard the allegation as conclusory.

**Civil No. 09-1322 (GAG)**

In support of its argument, PRTC cites Rollins Cablevue, Inc. v. Saienni Enterprises, 633 F. Supp. 1315 (D. Del. 1986), a district court case which held that Rollins, as a cable operator, did not have a private right of action under the Cable Act to seek to enjoin defendants from constructing and operating a satellite television system on the ground that it would violate the Cable Act. The court reasoned that, because there is no provision in the Cable Act creating a private remedy for a franchised cable operator to enjoin unfranchised cable systems, the court had to review the four factors articulated by the Supreme Court in Cort v. Ash, 422 U.S. 66 (1975), in order to determine if such a private right of action was implicit in the Cable Act: (1) whether the plaintiff is one of the class for whose special benefit the statute was enacted; (2) whether there is any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one; (3) whether implication of such a remedy is consistent with the underlying purposes of the general legislative scheme; and (4) whether implying a federal remedy is inappropriate because the subject matter involves an area basically of concern to the states. Id. at 78.

The Delaware District court reviewed the legislative history of the Cable Act and identified two predominant objectives: "1) to make the local franchising process the primary means of cable television regulation, and 2) to insure that the public receives the widest possible diversity of information services and sources, in a manner which is responsive to the needs and interests of the local communities." Rollins Cablevue, Inc., 633 F. Supp. at 1318 (citing Housatonic Cable Vision v. Dept. of Public Utility, 622 F. Supp. 798, 811 (D. Conn. 1985)). The court also noted that, where Congress explicitly created rights of action under the Cable Act for the enforcement of these objectives, it did so either to (1) establish a process which protects the cable operator against unfair denial of renewal by the franchising authority, or (2) to permit a consistency in the decisions reached with respect to the diversification of information sources.[5] The court further noted that the Cable

---

[5] Specifically, the court pointed out Section 635 of the Cable Act, 47 U.S.C. § 555, which provides any cable operator, adversely affected by a final decision made by a franchising authority on modification or renewal, to bring an action in a Federal district court or in a state court; and Section 612 of the Cable Act, 47 U.S.C. § 532, which specifies a right of action for persons,

**Civil No. 09-1322 (GAG)**

Act is an amendment of the Communications Act of 1934, which has traditionally been interpreted by the courts as not creating private rights of action. See Scripps Howard Radio, Inc. v. Federal Communications Commission, 316 U.S. 4, 14 (1942) ("The Communications Act of 1934 did not create new private rights. The purpose of the Act was to protect the public interest in communications."), quoted in Rollins Cablevue, Inc., 633 F. Supp. at 1319; Comtronics, Inc. v. Puerto Rico Tel. Co., 409 F. Supp. 800, 811-12 (D.P.R. 1975) (recognizing that the Communications Act of 1934 did not create any private rights) (citing Scripps, 316 U.S. 4 (1942); New England Tel. & Tel. Co. v. Public Utilities Comm'n of Maine, 565 F. Supp. 949, 955-56 (D. Me. 1983) ("In order to insure that the FCC, through its discretion and expertise, will be able to foster beneficial and proper interpretations and applications of the Communications Act, the Act is generally viewed as not having created implied private rights of action, either for damages, or for injunctive relief.") (internal citations and quotation marks omitted), quoted in Rollins Cablevue, Inc., 633 F. Supp. at 1319-20. The Delaware District Court reasoned that, since the FCC is seen as the interpreter of the Communications Act, it would seem that, except in especially designated areas, the local franchising authorities are intended to be the regulators and enforcers of the Cable Act. The court also found it significant that, as an amendment to the Communications Act of 1934, the Cable Act specified Federal court remedies only in limited areas. Thus, the court concluded that, in light of the four factors set out by the Supreme Court in Court v. Ash, it found no intent, express or implicit, to create a private right of action in a cable operator to enjoin the construction and operation of an allegedly unfranchised rival cable system.

     After conducting its own independent research, this court finds that the reasoning of the Delaware District Court in Rollins Cablevue, Inc. is sound, and concludes that OneLink lacks standing in this case to bring a private cause of action against PRTC, an unfranchised rival cable operator, to enjoin the construction and operation of its cable system. In so holding, the court takes

---

aggrieved by the refusal of a cable operator to make commercial channel capacity available, to bring suit in Federal court to compel that such capacity be made available. See Rollins Cablevue, Inc., 633 F. Supp. at 1319.

**Civil No. 09-1322 (GAG)**

into account OneLink's argument that depriving it of the right to bring suit in Federal court might render the Cable Act's franchising requirements "unenforceable and essentially meaningless." OneLink's Opposition, Docket No. 35 at 12-15, 27. However, whether or not the scheme envisioned by Congress would render its franchising requirements "meaningless" or "unenforceable" is not for this court to determine or consider when evaluating the existence, under Court v. Ash, of an implied private cause of action under the Cable Act.

PRTC also argues that the Cable Act does not provide a private right of action to enforce the FCC orders referenced in the complaint, because these are FCC rulemaking orders of general applicability. This court agrees. In New England Telephone and Telegraph Company v. Public Utilities Commission of Maine, 742 F.2d 1 (1st Cir. 1984), the First Circuit found that an FCC order that was the product of a "rulemaking proceeding" did not fall under the Cable Act's definition of "order" for purposes of 47 U.S.C. § 401(b), which provides a private right of action to injured parties for the enforcement of FCC orders.[6] The court determined that section 401(b) does not apply beyond the context of "adjudicatory orders," or "final disposition[s], whether affirmative, negative, injunctive, or declaratory in form, of an agency *in a matter other than rulemaking* [. . .]" Id. at 5 (quoting the Administrative Procedure Act, 5 U.S.C. § 551(6)). The order at issue in New England Telephone was, in the court's view, "an agency statement of general [. . .] applicability and future effect designed to implement, interpret, or prescribe law or policy [. . .]" Id. at 4 (quoting the Administrative Procedure Act, 5 U.S.C. § 551(4)). The court understood that "to interpret section 401(b) more broadly –to apply it beyond the context of the 'adjudicatory order'– threatens to interfere seriously with the well established principle that the 'enforcement' of the Communications Act is 'entrusted primarily to an administrative agency.'" Id. at 5 (quoting Massachusetts

---

[6] The statute states, in part, as follows: "If any person fails or neglects to obey any order of the Commission other than for the payment of money, while the same is in effect, the Commission or any party injured thereby, or the United States, by its Attorney General, may apply to the appropriate district court of the United States for the enforcement of such order [. . .]" 47 U.S.C. § 401(b).

9

**Civil No. 09-1322 (GAG)**

Universalist Convention v. Hildreth & Rogers Co., 183 F.2d 497, 500 (1st Cir. 1950)).  The court also reasoned that, because rules are general in form and can be highly general in content, "to apply a rule to particular cases often (though not always) requires not only adjudicatory fact finding, but also interpretation of the rule's scope and meaning." Id. at 6 (citations omitted).  "To construe 401(b) to include a private right to enforce commission rules would place this interpretative function squarely in the hands of private parties and some 700 federal district judges, instead of in the hands of the Commission." Id.

In this case, OneLink invokes the 1991 FCC Report and Order, which states that "firms seeking to construct and operate 'cable systems' as defined in [47 U.S.C. § 522(6)] must first obtain a franchise from the state government or its local designate." Id. at 1272 ¶ 12.  OneLink also invokes the 2007 FCC Report and Order, which it interprets as establishing that, even when an entity contends that its construction might have "mixed-uses," it still has an obligation to obtain a cable franchise before beginning such construction once it "proposes to offer cable services." Id. at 5155 ¶ 121.  These are FCC rulemaking decisions of the sort that the First Circuit determined were beyond the scope of 47 U.S.C. § 491(b).  Like in New England Telephone, both of these FCC orders were the product of rulemaking proceedings in which OneLink had no participation.  The 2007 FCC Report and Order states that the purpose of the order is to adopt rules and provide guidance to implement Section 621(a)(1) of the Cable Act, as a result of a "Notice of Proposed Rulemaking" issued *sua sponte* by the FCC.  Id. at 5102 ¶ 1, 5106 ¶ 10.  Likewise, the 1991 FCC Report and Order states that it constitutes final action amending the FCC's rules to reflect proposals contained in its "Notice of Proposed Rule Making," issued in response to a "Petitition for Rule Making" filed by Todd Integrated Systems, Inc., the owner and operator of a satellite cable system in the New York area.  Id. at 1270 ¶ 1, 5.  Both orders resulted in FCC statements of general applicability and future effect designed to implement, interpret, or prescribe law or policy, and did not adjudicate the rights of individuals, much less the rights of OneLink in particular.  See Columbia Broadcasting System, Inc. v. United States, 316 U.S. 407, 418 (1942) ("Unlike an administrative order or a court judgment adjudicating the rights of individuals, which is binding only on the parties to the particular

**Civil No. 09-1322 (GAG)**

proceeding, a valid exercise of the rulemaking power is addressed to and sets a standard of conduct for all to whom its terms apply."), quoted in New England Telephone, 742 F.2d at 6. Thus, the court follows the binding precedent established by the First Circuit in New England Telephone[7] and concludes that, because the FCC orders at issue in this case constitute rules of general applicability, OneLink lacks standing under 47 U.S.C. § 401(b) to sue PRTC for their enforcement. Having determined that OneLink lacks standing to bring this suit, the court lacks authority to consider the other arguments raised by the parties regarding the legality of PRTC's alleged construction activities.

Finally, because no federal claims to ground jurisdiction remain in this case, OneLink's supplemental state law claims are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

## IV. Conclusion

For the reasons set forth above, the court **GRANTS** defendant's motion to dismiss (Docket No. 28). This ruling, however, is without prejudice to Onelink filing suit once a franchise is awarded to PRTC, should this happen in any event.

**SO ORDERED.**

In San Juan, Puerto Rico this 27th day of May, 2009.

*S/ Gustavo A. Gelpí*

GUSTAVO A. GELPI
United States District Judge

---

[7] The court rejects OneLink's invitation to ignore what is still binding precedent from the First Circuit, in favor of the opposing view held by a "majority of circuit courts." OneLink's Opposition, Docket No. 35 at 26. Moreover, its invocation of Global Crossing Telecommunications, Inc. v. Metrophones Telecommunications, Inc., 550 U.S. 45 (2007) (holding that 47 U.S.C. § 207 authorizes a federal-court lawsuit brought by a person who was injured by violations of 47 U.S.C. § 201(b), which prohibits "unreasonable practices" in the provision of communication services), is misplaced, for that case was decided in the context of 47 U.S.C. §§ 201(b) and 207, not 47 U.S.C. § 401(b), which is the statute at issue in this case and in regards to which the First Circuit has established a clear standard for determining jurisdiction. Whether or not the Supreme Court's decision in Global Crossing might "undercut" this court's reliance on the First Circuit's decision in New England Telephone, it did not override its precedential value with regards to 47 U.S.C. § 401(b) and this court must, therefore, abide by the First Circuit's decision.